[No. 11316.  In Bank. — March 16, 1887.]

JAMES GAFNEY, RESPONDENT, *v.* CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

STREET ASSESSMENT — SAN FRANCISCO — ACT OF APRIL 4, 1870 — ACTION BY CONTRACTOR — JUDGMENT DETERMINING INVALIDITY OF ASSESSMENT. — Under the act of April 4, 1870, providing that a contractor for street work in the city and county of San Francisco, when he has faithfully performed his contract, shall be paid the amount due thereon out of the street department fund, after the assessment for the work has been declared invalid by the highest courts of the state, if such invalidity shall appear by the decision of the courts not to have been caused by the fault of the contractor, the judgment rendered in the action to foreclose the assessment, determining its invalidity, is not conclusive upon the contractor, in a subsequent action by him against the city and county to recover the amount due on the contract, as to the grounds upon which the assessment was held invalid. Nor is it essential to the right of the contractor to maintain the action against the city and county that the judgment on the assessment should affirmatively show that the invalidity of the assessment was not caused by any fault of his.

ID. — CONTRACTOR WHEN ENTITLED TO INTEREST. — In such an action against the city and county, the contractor is only entitled to recover legal interest upon the amount due under the contract from the time when the adjudication of the invalidity of the assessment became final.

ID. — MACADAMIZING STREET — CONTRACT FOR — PETITION BY PROPERTY OWNERS. — Under the statute referred to, a petition signed by a majority of the property owners is not necessary to authorize the board of supervisors to contract for macadamizing a street in the city and county of San Francisco, although it is essential to authorize the work of grading; and a contract for macadamizing is not rendered invalid because the resolution and order of the board of supervisors for such work embraced the work of grading also, and no petition for the grading had been made by the property owners.

ID. — GRADE OF STREET — SUFFICIENT DESIGNATION. — A statute fixing the grades of certain streets in the city and county of San Francisco at their points of intersection, fixes the grade at all intermediate points by connecting the named points by a straight line.

ID. — WIDTH OF STREET — DESIGNATION BY OFFICIAL MAP. — The width of a street in the city and county of San Francisco is sufficiently designated on the official map by a number printed across the space denoting the street, without indicating what the number stood for, if the scale of the map shows that the number was intended to represent feet.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Garber, Thornton & Bishop, George Flournoy, Jr.,* and *John L. Love,* for Appellant.

*Mich. Mullany,* for Respondent.

TEMPLE, J.—Appeal from a judgment in favor of plaintiff, and from an order denying a new trial.

Prior to 1870 street work in San Francisco had been inaugurated by a resolution and notice of intention, followed by certain notices and advertised proposals, ending in a contract. The superintendent of streets was required to approve the work, when satisfactorily performed, and to issue to the contractor an assessment on the adjoining lots in payment for the work. Here the concern of the city ended. The contractor assumed control of all further proceedings, and the issuance of the assessment discharged the city from all further liability to him.

Under this system the lot-owner could set up to defeat the action, not only defects in the proceedings before the contract was let, but defects in the assessment, which assessment could only be made after the superintendent of streets had determined that the contract had been fully performed. Here was an obvious hardship. The contractor could not control the action of the city official, but still he was liable to lose the entire reward of his labor through an oversight of the officer. The proceedings having been held to be *in invitum,* a strict compliance with the statute was exacted, and very frequently great hardship resulted without fault on the part of the contractor.

In the statute passed April 4, 1870 (Stats. 1869–70, p. 890), this system was changed. All the proceedings down to the assessment were left substantially as before. From this point a new system was adopted. The assessment made by the superintendent of streets was delivered

to the tax collector, and in lieu of the assessment, the superintendent gave the contractor an order for the amount due him, payable only out of the funds collected from the property holders, and in amounts as the same should be collected at the end of each month.

An assistant was provided for the city and county attorney specially to sue for and collect the street assessments, and it was made mandatory upon him to commence these suits within ten days after the assessments were delivered to him.

It was further provided that, "when any contract for street work shall have been made by the proper officers of said city and county, and shall be fully and faithfully performed by the contractor thereof, or his assigns, in every respect, and in accordance with the terms of said contract, and afterwards the assessment for the payment of such street work shall be declared to be invalid by the highest courts in the state, and if such invalidity shall appear by the decision of such courts not to have been caused by the frauds, acts, conduct, or omission of said contractor, it shall be the duty of the said board of supervisors of said city and county to order the full amount or amounts of such contract, or whatever amount or amounts shall be due and owing on said contract, to be paid to said contractor or his assigns out of the street department fund, together with all such fees to the said attorney as he, the said attorney, would have been entitled to if the same had been collected after judgment, and the city and county auditor shall audit and the treasurer shall pay the same, . . . . and upon such payment to such contractor as aforesaid, the said contractor or his assigns shall assign said contract to the city and county of San Francisco."

This action is upon a contract for macadamizing Railroad Avenue, entered into in 1871. The work was performed, the assessment made, suits brought upon the assessments, which were finally held invalid by the high-

est courts of the state November 1, 1882. The suits were decided in favor of the defendants on the ground:—

1. The grade and width of the street had never been officially established.

2. The board of supervisors had no jurisdiction to order the work to be done.

Now, it was necessary for the plaintiff to put in evidence this judgment, and show by it that it had been finally adjudicated that the assessment was invalid, as a condition precedent to his right to recover. It is now contended that it is conclusive as to the grounds upon which it was held to be invalid, not of course as *res adjudicata*, in the ordinary sense, but because by his contract he made his right to recover depend upon this judgment. Or, to put the matter in the strongest possible terms, he cannot rely upon this as an adjudication that the assessment was invalid, and at the same time claim a right to recover on the ground that the court erroneously so held. This certainly seems a very plausible argument, but the matter cannot be so easily disposed of. It is necessary to examine into the purpose and scope of the amendatory act before disposing of the question. As already stated, the change effected in the proceedings by the amendment commences after the work has been performed. Up to that time the former law was in force. It was necessary that there should be a valid contract binding upon the city. Whether there was power to contract, or the power, if it existed, had been exercised as directed by law, were matters which the contractor was bound to ascertain for himself, and to decide correctly at his peril.

The *data* for such conclusion were easily accessible to him. But under the former system his right to recover did not depend altogether upon his faithful performance of a valid contract. He took the assessment as payment, and this was liable to be declared void through the omission or mistake of the street superintendent after he had fully performed his labor. As he had no control over

the superintendent of streets, who was a municipal offi-
cer, this was a great hardship. The invalidity of the
contract, if it existed, he could ascertain beforehand, but
in regard to the assessment, if invalid, it was in conse-
quence of failure of duty on the part of the officials,
which he could neither anticipate nor prevent. Here
the new law steps in and (disregarding for the present
the necessity of an adjudication of the invalidity of the
assessment before a recovery can be had) declares, in
effect, that if there be a valid contract, and the con-
tractor has faithfully performed his work, he shall be
paid. The condition is only that the assessment fails
through no fault of the contractor.

Having been compelled to decide upon the validity of
the contract at his peril, it would be hard measure after
he had faithfully performed his work, if that question
could be decided against him without his having an
opportunity to be heard. The presumptions are all
against a construction which would not allow him his
day in court.

The language of the act does not necessarily require
this construction. It provides that he shall be paid by
the city if he fully performs, and afterwards the street
assessment shall be declared invalid, "and if such inva-
lidity shall appear by the decision of said courts not to
have been in any manner caused by the frauds, acts,
conduct, or omissions of said contractor."

The contractor was not and could not have been a
party to those suits. The litigation was between the
city and the lot-owners. If the construction contended
for be correct, both parties to the suit would gain by a
decision in favor of the lot-owners, establishing the in-
validity of the contract. The city by simply failing to
put in proof could escape liability, and the contractor,
who would be the only one to suffer loss, could not pre-
vent it. The statute allows the lot-owner to defend, not
only for defects in the assessment, but on the ground

that the supervisors had no jurisdiction to order street work done. As to only two matters does the statute seem to require an adjudication before the contractor can have recourse to the city for payment. These are:—

1. That the assessment is invalid.

2. The invalidity was in no manner caused by the fault of the contractor.

The essential thing here is, there being a valid contract, and the work having been done, the city fails to collect without fault on the part of the contractor. And we think the judgment conclusive only on those two points.

But it is said there was in fact no valid contract.

First, there was no petition signed by a majority of the owners of property, etc.

The contract was for macadamizing, and it is not claimed that such petition was required as a preliminary to such a contract, but such petition was necessary to authorize the work of grading, and here both were embraced in one resolution, and ordered at the same time, and it is claimed that there could be no power to contract for macadamizing unless there was jurisdiction to order the grading. But we do not see why the validity of this contract should depend upon the other. It seems that they may both be let at the same time, and that a contract for macadamizing may be let before the grading is completed. (*Dyer* v. *Hudson*, 65 Cal. 374; *Emery* v. *San Francisco Gas Co.*, 28 Cal. 375.) Of course in such cases, although the contract for grading may be valid, there is still a contingency as to whether the work will be performed. If the grading be not done, the contract for macadamizing must fail. If the grading fail because the contractor is not legally bound, it will be no worse than a failure for any other reason. After a street is graded, though under a void contract, the power to macadamize would be the same. We think the contract not invalid for that reason.

It is next objected that the grade of Railroad Avenue had not been established. But we think the statute referred to has that effect. It enacts that the grades of the streets and avenues mentioned shall be with reference to the base line of city grades, for the intersections named, as follows, etc. We understand this to be the usual mode of designating grades for streets, and that it fixes the grade not only at points specially mentioned, but at all points intermediate, by simply connecting the named points by a straight line.

The width was shown by the official map by the number of the feet being printed across the space denoting the streets, without indicating what the numbers stood for. For instance, across the space indicating Railroad Avenue was printed the number 100. The word "feet" was not added. The scale of the map, however, would show that the space was one hundred feet. These two facts taken together sufficiently show what the figures were intended to represent.

Nor do we think there can be any doubt as to the extensions of time within which the work was done. It could not have been intended by the act of 1872 to render the completion of existing contracts impossible. The contract itself provided for extensions, and as it was known when entered into that its performance would depend to some extent upon the grading, a reasonable exercise of this power was expected.

But it is contended that the statute makes it a condition precedent to the right of the contractor to be paid that it should affirmatively appear in the judgments on the assessments, that the assessment was invalid, and that such invalidity was not caused by any fraud, act, conduct, or omission of the contractor. The contractor could not have been made a party to these proceedings. If there was in fact no fault on his part affecting the validity of the assessment, and no charge of any such, there could not possibly be such adjudication. It would

rest altogether with the lot-owners, — defendants in the suits on the assessment, — whether they would interpose such defense, and if the appellant be correct upon this proposition, a failure on the part of the contractor to be guilty of any conduct capable of raising a suspicion of wrong would insure his loss to all claim to compensation, if there were a failure from any cause to collect the assessment, for instance, through the fault of the superintendent in making the assessment. Such a construction of the statute cannot be the true one. The only reasonable meaning which can be given to the law is that such fact, to wit, the invalidity of the assessment without fault on the part of the contractor, does appear when the judgment discloses the grounds upon which the court finds the assessment invalid, and the fault of the contractor does not appear to have contributed to such invalidity. If that be not so, then the condition is an impossible one in the literal sense, and it is sufficient that in the suit brought upon that contract such facts appear.

We do not understand upon what ground the court allowed interest upon plaintiff's claim at the rate of ten per cent per annum. This is an action upon the contract, and that contains no warrant for such judgment. Neither does the act contain any provision which would justify such a claim. The assessment to be paid by the lot-owner, at least after it becomes delinquent and suit is brought, is to bear interest. Probably it was intended that the interest when collected should go to the contractor, although we find no express direction in the statute upon the subject. But there is no provision for interest on the contract, and the board is directed simply to allow the amount due on the contract. This could only bear legal interest from the time it became due. (Civ. Code, sec. 1917.) It became due from the city only when the adjudication of the invalidity of the assessment became final, which was November 1, 1882.

There was no forbearance in favor of the city, or detention of the money by the city until then. (Civ. Code, sec. 1915.)

The judgment must be modified in regard to the matter of interest as herein indicated, and also so that it shall be payable only out of the street department fund, and not from the general fund. In other respects the judgment and order are affirmed.

McFARLAND, J., THORNTON, J., McKINSTRY, J., and SHARPSTEIN, J., concurred.

Rehearing denied.